UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY PALMIERI,

Plaintiff,

v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 3:22-CV-00119-WVG

**ORDER ON JOINT MOTION FOR
JUDICIAL REVIEW**

## I.      INTRODUCTION

This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Anthony Michael Palmieri's ("Plaintiff") application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act").  On October 17, 2022, the Parties filed a Joint Motion for Judicial Review ("Joint Motion"). (Doc. No. 18.) The Joint Motion addresses whether Administrative Law Judge James Delphey ("ALJ Delphey") erred in evaluating (1) the testimony of treating physician Dr. Donnelly, (2) the medical opinion of consultative examiner Dr. Durr, and (3) Plaintiff's subjective testimony. *See* Doc. No. 18.  For the reasons below, the Joint Motion for Judicial

Review is GRANTED IN PART, DENIED IN PART, and REMANDED for further administrative proceedings.

## II.   PROCEDURAL HISTORY

On April 18, 2019, Plaintiff filed an application for SSI benefits under Title XVI of the Act, alleging a disability onset date of January 4, 1980. (AR 168-174.) On August 2, 2019, the Commissioner initially denied Plaintiff's application. (AR 99-104.) On September 28, 2019, Plaintiff submitted a request for reconsideration. (AR 105-107.) On December 30, 2019, the Commissioner denied Plaintiff's application upon reconsideration. (AR 108-113.) On February 28, 2020, Plaintiff filed a written request for hearing by an Administrative Law Judge. (AR 114-116.)

On November 10, 2020, Plaintiff testified at a telephonic hearing with ALJ Delphey ("November 10, 2020 Hearing"). (AR 29-61.) Plaintiff was represented by his attorney, David Shore. (AR 29.) Vocational expert Alan Cummings also testified at the hearing. (AR 29, 58-60.) At issue was whether Plaintiff was disabled under section 1614(a)(3)(A) of the Act. (AR 10.)

On December 31, 2020, ALJ Delphey issued a written decision, finding Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. (AR 10-21.) On December 14, 2021, the Social Security Appeals Council ("Appeals Council") denied Plaintiff's Request for Review and thus finalized the Commissioner's ultimate decision. (AR 1-6.) On January 28, 2022, Plaintiff filed the operative Complaint in this case seeking review of ALJ Delphey's decision. (Doc. No. 18.)

## III.   FACTUAL BACKGROUND

### a.  Plaintiff's Medical History and Allegations

Plaintiff is 43 years old and alleges he is unable to work due to physical and mental impairments that have left him disabled. (AR 62.) Plaintiff alleges a disability onset date of January 4, 1980.  (AR 10.)  Regarding his physical limitations, Plaintiff contends he suffers from left eye problems, hearing loss in his right ear, and low back pain. (AR 57, 63.) Regarding his mental impairments, Plaintiff contends he suffers from psychosis, a

learning disability, Tourette syndrome, anxiety, anger issues, non-command auditory hallucinations, and paranoia. (AR 53, 55, 63.) In his SSI application, Plaintiff reported that he took Abilify for Tourette/Depression and Amitriptyline for Depression. (AR 195.) At the November 10, 2020 Hearing, Plaintiff testified that he received Invega injections every three months, which assisted with his mood. (AR 56.) Plaintiff reported that he received special education from fourth through twelfth grade and graduated from high school on time. (AR 52-53, 285.) Plaintiff did not have any relevant work history to meet the regulatory requirements of past relevant work. (AR 19, 57, 285.)

### b. Dr. Donnelly's Assessment of Plaintiff

On November 16, 2016, Plaintiff began treatment with John Donnelly, M.D. ("Dr. Donnelly"). (AR 442.) Dr. Donnelly typically scheduled Plaintiff for an appointment every six to eight weeks. (*Id.*)

On October 31, 2017, Plaintiff presented to Dr. Donnelly and denied depression, endorsed "pretty good" concentration, endorsed only a "little bit" of anxiety, and denied side effects from his medication. (AR 293-294.) Upon examination, Dr. Donelly found Plaintiff was alert, cooperative, had articulate speech, a pretty good mood, and properly oriented. (AR 294.) Dr. Donelly also noted Plaintiff endorsed auditory hallucinations but reported improvement with medication and exhibited fair insight and judgment. (AR 294.)

On January 17, 2018, Plaintiff reported his mood was "pretty good, positive" on most days and denied auditory and visual hallucinations. (AR 296.) Plaintiff also reported some anxiety related to searching for work. (AR 296.) His mental examination was similar to that on October 31, 2017. (AR 296-298.) On March 15, 2018, Plaintiff endorsed irritability, issues with following through on tasks, and concentration. (AR 299.) Dr. Donnelly opinioned Plaintiff's mental examination was similar to his two previous examinations. (AR 299-300.)

On May 4, 2018, Plaintiff reported that he was "doing ok" despite feeling more irritable due to his medication. (AR 304.) Plaintiff reported he would go out to see friends, ride his bike, and looked for work in the past month. (AR 304.) Dr. Donnelly observed

1    that Plaintiff's mental examination was identical to his prior examinations.  (AR 305.)

2        On June 4, 2018, Plaintiff reported to Dr. Donnelly that he had "pretty good"

3    concentration, believed his medication was helping with outbursts, and was looking for

4    work as he had made a phone call to employment services. (AR 307-308.)

5        On September 20, 2018, Plaintiff denied issues with energy or concentration, but

6    reported an argument with his roommate (AR 314.) Plaintiff reported his stressors included

7    his housing, as he was with his mother 2-4 nights per week and "on the street" other nights.

8    (*Id.*)  Plaintiff also reported he twirls signs two days a week, was still looking for work but

9    did not contact employment services as directed by Dr. Donnelly. (*Id.*)  Dr. Donnelly

10   concluded that Mr. Palmieri experienced "Unspecified psychosis not due to a substance r/o

11   schizophrenia, borderline intellectual function." (AR 315.)  Dr. Donnelly further stated that

12   "patient claims improvement, mother claims ongoing problematic behavior. Will try

13   elevated dose of the Trileptal to see if further benefit to control of outbursts." (*Id.*) On

14   October 26, 2018, Dr. Donnelly's examination of Plaintiff reflected that Plaintiff was

15   cooperative made direct eye contact, had fair grooming, denied auditory or visual

16   hallucinations, had fair insight and judgment and was oriented.  (AR 319-320.)

17       In January 2019, Plaintiff reported to Dr. Donnelly that he was looking for

18   employment, riding his bike, hanging out with friends, and having a "pretty average" mood.

19   (AR 322). Plaintiff's mother reported that Plaintiff had outbursts and was concerned about

20   a new roommates' view of Plaintiff. Upon examination, Plaintiff's mental states was

21   identical to his prior examinations.  (AR 323.)  Dr. Donnelly noted he "strongly encouraged

22   thinking about anger management, patient seems not to be fully aware of intensity of this

23   at times." (AR 323.) On March 18, 2019, Plaintiff reported frustration with his homelife

24   and upon examination Dr. Donnelly noted tensions between Plaintiff and his mother, that

25   Plaintiff's insight and judgment were poor.  (AR 328.)

26       On May 3, 2019, Plaintiff reported that he was doing "pretty good, hearing muffled

27   voices sporadically, and spending time watching television, riding his bike, spending time

28   with friends, and "help[ed] move boxes, doing odd jobs once in a while". (AR 330.)  Upon

examination his judgment and insight were poor. (AR 331.) Plaintiff also reported feeling uncomfortable in group settings and has looked into anger management. (*Id.*)

On September 26, 2019, Plaintiff reported a pretty good mood overall, a little bit of anxiety, and helping a friend once a week for money. (AR 340.)  Plaintiff's mother reported that "a month ago [he] was not doing well, had not gotten injection 'very loud outbursts and neighbors complaining'. Once [Plaintiff] got the injection and noticed clear improvement." (*Id.*)

On August 5, 2020, Dr. Donnelly noted that Plaintiff was "last seen 6 months ago. Just restarted the Sustenna, thinks he was more scared at times when not getting routine injections" and believed he was "more calm since starting the injection again on July 31, 2020". (AR 384.) Dr. Donnelly noted that Mr. Palmieri's "insight and judgment thought to be poor", noted Plaintiff had unspecified schizophrenia and borderline intellectual function, and advised against continued use of cannabis due to potency and capacity to contribute to anxiety. (AR 385).  Dr. Donnelly also completed a Client Plan for Plaintiff which noted "[h]is symptoms continue to negatively impact his ability to work, concentrate, live independently, and make/attain goals." (AR 395.)

On October 30, 2020, Dr. Donnelly completed a Mental Impairment Questionnaire in connection with Plaintiff's SSI benefits application. (AR 442-445.) Dr. Donnelly opined that Plaintiff had the following limitations: (a) marked limitations in applying information, interacting with others, persisting, maintaining pace, adapting in the workplace, and managing oneself in the workplace; (b) moderate limitations in remembering information and concentrating; and (c) a mild limitation in understanding information. (AR 444.) Dr. Donnelly also checked three boxes indicating: (1) Plaintiff's chronic medical disorder was "serious and persistent" with a medically documented history of the existence of the disorder over a period of at least two years; (2) Plaintiff relied on ongoing medical treatment, mental health therapy, psychosocial support, or a highly-structured setting to diminish the symptoms and signs of his mental disorder; and (3) despite Plaintiff's diminished signs and symptoms, he only had marginal adjustment (a minimal capacity to

adapt to changes in his environment or demands that are not already part of daily life). (AR 445.)

Dr. Donnelly also opined that Plaintiff exhibited the signs and symptoms of delusions or hallucinations; irritability; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; difficulty concentrating and thinking; and recent impulsive, aggressive, or behavioral outbursts. (AR 442.) Dr. Donnelly wrote that "further improvement beyond current level of functioning [was] not anticipated." (AR 442.) Dr. Donnelly opined that Plaintiff would miss more than four days of work per month due to his impairments if Plaintiff attempted to work full time. (AR 445.) Finally, Dr. Donnelly opined that Plaintiff could not manage benefits in his own interest.  (AR 445.)

### c.  Dr. Kanner's Evaluation of Plaintiff

On June 27, 2019, Amy L. Kanner, M.D. ("Dr. Kanner") completed an internal medicine evaluation and functional assessment of Plaintiff. (AR 273-281.) Plaintiff complained of a "hole in my heart", Tourette syndrome, decreased hearing in the right ear, nearsightedness, and lower back pain. (AR 273.) Plaintiff reported taking 100mg of Amitriptyline. (AR 274.) Dr. Kanner found Plaintiff's Tourette syndrome "quiescent on exam." (AR 279.) Plaintiff's heart exam was within normal limits, and he did not have any murmurs. (AR 279.) Regarding Plaintiff's back pain, the exam was within normal limits. (AR 279.)

With respect to Plaintiff's functional assessment, Dr. Kanner found Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. (AR 280.) Dr. Kanner determined Plaintiff was able to stand or walk for 6 hours of an 8-hour workday, and Plaintiff was able to sit for 6 hours of an 8-hour workday. (AR 280.) Plaintiff's postural limitations included no climbing of ropes, ladders, or scaffolding. (AR 280.) Finally, Dr. Kanner opined Plaintiff should not work at heights or around dangerous machinery, should avoid exposure to loud noise, and should avoid exposure to any objects approaching from his right. (AR 280.)

/ / /

### d. Dr. Durr's Evaluation of Plaintiff

On July 8, 2019, Jessica Durr, Ph. D ("Dr. Durr") completed an evaluation of Plaintiff at the request of the Department of Social Services Disability Determination Service. (AR 283-288.) Dr. Durr administered a complete psychological evaluation, the Wechsler Adult Intelligence Scale IV, and the Wide Range Achievement Test 4. (AR 283.) Regarding test validity, Dr. Durr opined that Plaintiff's "[e]ffort appeared to be inconsistent," and Plaintiff was "unable to get many preschool items correct," even though Plaintiff graduated high school. (AR 287.)

In her prognosis impression and medical source statement, Dr. Durr stated that Plaintiff's overall cognitive ability on testing was in the extremely low range, which "appear[ed] to be inconsistent with clinical presentation, educational history, and activities of daily living." (AR 287.) Dr. Durr opined that Plaintiff presented with the ability to: (1) understand, remember, and carry out short and simplistic instructions; and (2) make simplistic work-related decisions without special supervision. (AR 288.) Dr. Durr opined Plaintiff had a mild inability to: (1) "understand, remember, and carry out detailed instructions"; (2) "follow normal rules of the workplace"; and (3) "interact appropriately with supervisors, coworkers[,] and peers." (AR 288.)  Dr. Durr also opined that Plaintiff had a moderate inability to "maintain consistency and pace throughout the day." (AR 288.) Finally, Dr. Durr opined that Plaintiff was at risk for calling in sick, not showing up, or needing to leave early. (AR 288.)

### e. Dr. Franco's Evaluation of Plaintiff

On August 1, 2019, Anna M. Franco, Psy.D ("Dr. Franco") performed a consultative examination and completed a Medically Determinable Impairments and Severity (MDI) form. (AR 70-71.) Dr. Franco opined that Plaintiff had mild limitations in: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing oneself. (AR 70.) Dr. Franco opined that Plaintiff had no limitations in interacting with others. (AR 70.)

/ / /

### f.  Dr. Kalmar's Evaluation of Plaintiff

On July 5, 2019, F. Kalmar, M.D. ("Dr. Kalmar") completed a physical residual functional capacity assessment. (AR 72-75.) Dr. Kalmar opined that Plaintiff had the following exertional limitations: occasionally lifting 50 pounds, frequently lifting 25 pounds, standing for approximately 6 hours in an 8-hour workday, and sitting for approximately 6 hours in an 8-hour workday. (AR 73.) Dr. Kalmar opined that Plaintiff had the following postural limitations: (1) frequently climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; and (2) occasionally climbing ladders/ropes/scaffolding. (AR 73.) Dr. Kalmar opined that Plaintiff should limit noisy work environments. (AR 74.) Dr. Kalmar also opined that Plaintiff was capable of a "medium RFC" with limitations against heights, dangerous machinery, and noisy work environments. (*Id.*)

### g.  Dr. Martin's Evaluation of Plaintiff

On December 21, 2019, Judy K. Martin, M.D. ("Dr. Martin") conducted a consultative examination and completed a medically determinable impairments and severity (MDI) form upon reconsideration. (AR 78-89.) Dr. Martin opined that Plaintiff had moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 87.)

Dr. Martin also completed a mental residual functional capacity assessment. (AR 91-93.) Regarding Plaintiff's understanding and memory limitations, Dr. Martin opined that Plaintiff's ability to understand and remember detailed instructions was moderately limited, but Plaintiff was capable of understanding and remembering simple instructions. (AR 91.)

Regarding Plaintiff's concentration and persistence limitations, Dr. Martin opined that Plaintiff had moderate limitations in his ability to: (1) carry out detailed instructions; (2) sustain an ordinary routine without special supervision; (3) work in coordination with or in proximity to others without being distracted by them; and (4) complete a normal

3:22-CV-00119-WVG

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 92.) Accordingly, Dr. Martin opined that Plaintiff was limited to carrying out simple instructions over the course of a normal workweek. (*Id.*)

Regarding Plaintiff's social interaction limitations, Dr. Martin opined that Plaintiff had moderate limitations in his ability to: (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*) As such, Dr. Martin opined that Plaintiff was capable of adequate social interactions in a setting that did not demand extensive contact with the public or extensive collaborative activity with coworkers. (*Id.*)

Finally, regarding Plaintiff's adaptation limitations, Dr. Martin opined that Plaintiff had moderate limitations in responding appropriately to changes in the work setting and setting realistic goals or making plans independently of others. (AR 93.) Accordingly, Dr. Martin opined that Plaintiff was capable of adapting to a routine setting in which changes were gradual and tasks were simple and repetitive. (*Id.*)

### h. Dr. Dupont's Evaluation of Plaintiff

On November 19, 2019, upon reconsideration, T. Dupont, M.D. ("Dr. Dupont") completed a physical residual functional capacity assessment. Dr. Dupont found Plaintiff had the same exertional limitations opined by Dr. Kalmar: occasionally lifting 50 pounds, frequently lifting 25 pounds, standing for approximately 6 hours in an 8-hour workday, and sitting for approximately 6 hours in an 8-hour workday. (AR 89-91.) Dr. Dupont also opined Plaintiff had the same postural limitations that were opined by Dr. Kalmar: (1) frequently climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; and (2) occasionally climbing ladders/ropes/scaffolding. (AR 90-91.) Dr. Dupont also opined that Plaintiff was capable of a "medium RFC" with limitations against noisy work environments. (*Id.*)

### i.  Vocational Expert Testimony

On November 10, 2020, Plaintiff and Alan Cummings ("Mr. Cummings"), an impartial vocational expert, appeared at the telephonic administrative hearing on Plaintiff's disability benefits application. (AR 29.) Mr. Cummings testified that a hypothetical person with Plaintiff's limitations could perform the work of a cleaner, laundry worker, packager, or assembler. (AR 58-59.)

### j.  Plaintiff's Testimony

During the November 10, 2020 Hearing, Plaintiff testified that he was living with his mother, took public transportation or got rides from people in the park, rode his bike on public streets, spent time with his friends, walked around a lot, and watched TV once in a while. (AR 36-38.) Plaintiff testified that he "sometimes" saw people or figures that were not real, "sometimes" thought people were following him around town, and "sometimes" heard voices inside his head. (AR 42, 53.) Plaintiff testified that he "can't perform multiple tasks at a time" and "needs help from people." (AR 44.) Plaintiff testified that he could wash dishes, clean his room, do his laundry, use the microwave, and take out the trash. (AR 46, 51-52.) Plaintiff denied having breakdowns in public where he acted in a manner that was upsetting to people around him but testified that he has "angry outbursts once in a while." (AR 49, 53-54.) Plaintiff testified that he "get[s] along with others pretty well." (AR 53.) Regarding his Tourette syndrome, Plaintiff denied engaging in any tics or repetitive actions, but testified that he gets nervous around people and cannot be in a crowd of more than two or three people. (AR 55.) Finally, Plaintiff testified that he was born with diminished hearing in his right ear but has good hearing in his left ear. (AR 57.)

### k.  ALJ Delphey's Notice of Decision

On December 31, 2020, ALJ Delphey issued a written decision denying Plaintiff's application for SSI benefits. (AR 10-21.) ALJ Delphey concluded that Plaintiff was not disabled within the meaning of the Act from his application date of April 11, 2019. (AR 10.) As to the five-step evaluation process, ALJ Delphey made the following findings:

/ / /

At step one, ALJ Delphey concluded that Plaintiff had not engaged in substantial gainful activity since April 11, 2019, the application date. (AR 12.) At step two, ALJ Delphey determined that Plaintiff had the following severe impairments: schizophrenia spectrum disorder, Tourette syndrome, mood disorder with irritability, depression, anxiety, and diminished hearing of the right ear. (AR 12.)

At step three, ALJ Delphey found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 13.) ALJ Delphey determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) Plaintiff can frequently climb ramps and stairs, and occasionally climb ladders and scaffolding; (2) Plaintiff should never climb ropes; Plaintiff can frequently balance, stoop, kneel, crouch, and crawl; (3) Plaintiff needs to avoid a work environment with loud noise; (4) Plaintiff needs to avoid work around dangerous, moving machinery; (5) Plaintiff is limited to work involving simple, routine tasks; (6) Plaintiff requires a stable and habitual workplace; and (7) Plaintiff can have occasional work-related interactions with supervisors and co-workers, but no public interaction at all. (AR 15.)

At step four, ALJ Delphey determined that transferability of job skills was not an issue due to Plaintiff's lack of past relevant work. (AR 20.) At step five, ALJ Delphey found Plaintiff was not disabled as there were a significant number of jobs in the national economy that Plaintiff could perform considering his age, education, work experience, and RFC. (AR 20-21.) The jobs titles included cleaner, laundry worker, packager, and assembler. (AR 20.)

## IV.   LEGAL STANDARD

Section 405(g) of the Social Security Act provides for federal district court review of a final decision of the Commissioner of Social Security. 42 U.S.C. 405(g). However, district courts will not overturn the Commissioner's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th

785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Where the evidence is susceptible to more than one rational interpretation, an ALJ's decision must be upheld. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Finally, reversal is not warranted where the ALJ's error is harmless. *Molina v. Astrue*, 674 F.3d 1004, 1111 (9th Cir. 2012), superseded by regulations on other grounds as recognized in *Sweets v. Kijakazi*, 855 F.App'x 325, 326 (9th Cir. 2021). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1111 (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## V.    DISCUSSION

In the Joint Motion, the Parties identified three issues for the Court's review, namely whether ALJ Delphey erred in evaluating (1) Dr. Donnelly's opinion; (2) Dr. Durr's opinion; and (3) Plaintiff's subjective testimony.  The Court addresses each issue in turn.

### a.  ALJ Delphey's Evaluation of Dr. Donnelly's Medical Opinion

The first issue Plaintiff raises is whether ALJ Delphey erred in evaluating Dr. Donnelly's opinion. Plaintiff contends ALJ Delphey committed reversible error by failing to evaluate whether Dr. Donnelly's opinion was supported by and consistent with the record. (Jt. Mot. 7.) Specifically, Plaintiff argues that despite discussing some portions of Dr. Donnelly's opinion, ALJ Delphey did not analyze the supportability of Dr. Donnelly's

opinion and fumbled the consistency analysis.   (Jt. Mot. 10-13, 16-17.) In contrast, Defendant argues that ALJ Delphey did not err because his assessment of Dr. Donnelly's opinion was supported by substantial evidence. (Jt. Mot. 13-16.)

Claims filed after March 27, 2017, such as Plaintiff's claim, are governed by a new set of regulations for evaluating medical evidence.  Under the new regulations, the agency does not defer to any medical opinions, even those from treating sources. 20 C.F.R. § 416.920c(a) (2017). Now, ALJs determine which opinions are the most "persuasive" based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors. *See* 20 C.F.R. §§ 416.920c(c)(1)-(5).

The new regulations require the ALJ to explain how he or she considered the two most important factors, supportability and consistency. *See* 20 C.F.R. §§ 416.920(c)(a), 416.920(c)(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." *Id.* § 404.1520c(c)(1). The regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the  more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2). In sum, under the new regulations, "an ALJ cannot reject an examining

1   or treating doctor's opinion as unsupported or inconsistent without providing an
2   explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. An ALJ errs when
3   he rejects a medical opinion or assigns it little weight while doing nothing more than
4   ignoring it, asserting without explanation that another medical opinion is more persuasive,
5   or criticizing it with boilerplate language that fails to offer a substantive basis for his
6   conclusion. *Sylvester G. v. Saul*, Case No. 2:20-cv-02842, 2021 U.S. Dist. LEXIS 112206,
7   at *15 (C.D. Cal June 15, 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th
8   Cir. 2014)).

### i. Consistency

10   Regarding the factor of consistency, Plaintiff argued ALJ Delphey did not use an
11   "apples-to-apples approach" to evaluate Dr. Donnelly's opinion because ALJ Delphey only
12   addressed Plaintiff's marked limitations related to memory, concentration, and interacting
13   with others. (Jt. Mot. 10.) Plaintiff argued ALJ Delphey did not address Dr. Donnelly's
14   opinion that Plaintiff also had marked limitations in applying information, persisting and
15   maintaining pace, adapting in the workplace, and managing oneself in the workplace. *Id.*
16   In turn, Defendant argues ALJ Delphey's analysis of the consistency of Dr. Donnelly's
17   opinions was proper as Plaintiff's medical records, Plaintiff's reports about his mental
18   limitations, the opinions of Dr. Martin and Dr. Durr, and Dr. Donnelly's own records
19   substantially supports the inconsistencies pointed out by the ALJ.  (Jt. Mot. 15-16.)

20   In reviewing ALJ Delphey's Notice of Decision, the Court finds ALJ Delphey did
21   not adequately address the consistency factor of Dr. Donnelly's opinions. Although ALJ
22   Delphey noted that "treatment records are consistent with a greater level of functioning",
23   his citations to Dr. Donnelly's treatment records and consistency analysis only focused on
24   Plaintiff's memory, concentration, and interactions with others, not all of Dr. Donnelly's
25   medical opinions regarding Plaintiff's other limitations. *See* AR 19. Specifically, ALJ
26   Delphey did not address Dr. Donnelly's opinions that (1) Plaintiff's had marginal
27   adjustment and minimal capacity to adapt to changes in his environment or demands that
28   are not already part of daily life (AR 445); (2) "further improvement beyond [Plaintiff's]

current level of functioning [was] not anticipated" (AR 442); Plaintiff would miss more than four days of work per month due to his impairments if Plaintiff attempted to work full time (AR 445); and Plaintiff could not manage benefits in his own interest. (AR 445.) Despite the availability of other medical provider's records, ALJ Delphey merely stated "none of his providers indicated a memory impairment" and then proceeded to only cite to Dr. Donnelly's medical records. Additionally, ALJ Delphey's entire paragraph discounting Dr. Donnelly's opinion is nearly identical to two paragraphs included earlier in the Notice of Decision. Cf. AR 17, 18, 19. It appears ALJ Delphey substantially copied and pasted this paragraph in three portions of his Notice of Decision. *Id.*

The Court is also unpersuaded by Defendant's post-hoc explanation of Dr. Donnelly's treatment records and reference to Dr. Lucero and Dr. Durr's medical records as evidence ALJ Delphey properly analyzed the consistency factor. ALJ Delphey did not cite to or refer to either of these medical opinions in his analysis of Dr. Donnelly's opinion. (AR 19.) Defendant's post-hoc explanations do not relieve ALJ Delphey of his obligation to analyze the consistency of Dr. Donnelly's opinions. *See DAVID P., Plaintiff, v. KILOLO KIJAKAZI, Acting Comm'r of the Soc. Sec. Admin., Defendant.*, No. 22CV906-LR, 2023 WL 6120994, at *12 (S.D. Cal. Sept. 15, 2023)("The problem with this reasoning, however, is that it was not presented by the ALJ in the decision itself.") citing to *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court finds ALJ Delphey insufficiently articulated his evaluation of the consistency factor of Dr. Donnelly's opinions.

### ii.  **Supportability**

Defendant argues that ALJ Delphey did not err because the new regulations require an ALJ's decision, including the decision to discredit any medical opinion, to simply be supported by substantial evidence. (Doc. No. 18 at 13-14.) While Defendant is correct that

substantial evidence must support the ALJ's decision, that alone also is not sufficient to discredit a medical opinion. *See* 20 C.F.R. § 404.1520c(b); *see also Hiten v. Kijakazi*, No. 122CV00473JLTBAM, 2023 WL 5806452, at \*6 (E.D. Cal. Sept. 7, 2023); *Kimberli M. S. v. Kijakazi*, No. 21CV1836-AJB-MDD, 2023 WL 2346330, at \*7 (S.D. Cal. Mar. 3, 2023).

Here, ALJ Delphey did not address the supportability of Dr. Donnelly's opinion that Plaintiff has marked limitations in applying information; interacting with others; persisting; maintaining pace; adapting in the workplace; and managing oneself in the workplace. *See* AR 19. ALJ Delphey also failed to address the supportability of Dr. Donnelly's opinions that "further improvement beyond current level of functioning [was] not anticipated and that Plaintiff would miss more than four days of work per month due to his impairments if Plaintiff attempted to work full time. *See id.* Instead, ALJ Delphey merely noted "The undersigned notes that the provider supported this with an explanation" (AR 19) and moved onto his analysis of the consistency of Dr. Donnelly's opinion. (*Id.*) There was no explanation or analysis whatsoever as to whether Dr. Donnelly's opinion was supported by the relevant medical evidence. *See id.* As stated above, "[a]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent *without providing an explanation* supported by substantial evidence". *Woods*, 32 F.4th at 792 (emphasis added); *Kimberli M. S.*, No.2023 WL 2346330, at \*7 (rejecting Commissioner's argument that an ALJ's decision to discredit a medical opinion "must simply be supported by substantial evidence;" finding ALJ insufficiently articulated evaluation of the supportability factor where ALJ made no determination of supportability).

The Court finds ALJ Delphey did not properly evaluate the persuasiveness of Dr. Donnelly's opinions because he failed to address the factor of supportability.

### b. ALJ Delphey's Evaluation of Dr. Durr's Medical Opinion

The second issue is whether ALJ Delphey erred in evaluating Dr. Durr's medical opinion. An ALJ's decision must account for the record "as a whole," and cannot rely on "cherry-picked" evidence. *See Thompson v. Comm'r of Soc. Sec.*, No. 2:20-CV-0003, 2021

U.S. Dist. LEXIS 56157, at *16 (E.D. Cal Mar. 24, 2021) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)). Circuit courts have not yet rendered decisions on whether cherry picking is still prohibited under the new regulations, however, district courts have. *See e.g. Thompson*, 2021 U.S. Dist. LEXIS 56157, at *9 (holding that the ALJ impermissibly cherry-picked the record when analyzing consistency and supportability of a medical opinion). Unpublished cases have held that where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he elected not to accept them. *See Lara v. Saul*, No. 2:19-cv-1527, 2020 U.S. Dist. LEXIS 171550, at *7 (E.D. Cal. Sep. 18, 2020); *Neufeld v. Berryhill*, No. 2:16-CV-03644, 2018 U.S. Dist. LEXIS 169475, at *16 (C.D. Cal. Sep. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); *Betts v. Colvin*, No. 11-17522, 531 F.App'x 799, 800 (9th Cir. 2013) (unpublished) (finding the ALJ erred by disregarding certain limitations in the opinion the ALJ afforded "the greatest weight").

Plaintiff argues that the ALJ "picked only the portions of the medical opinions that aligned with the RFC" and did not address certain key pieces of Dr. Durr's opinion that "[Plaintiff] has a moderate inability to maintain consistency and pace throughout the day . . . He has a mild inability to follow normal rules of the workplace. He is at risk for calling in sick, not showing up, or needing to leave early." (Jt. Mot. 19.) Plaintiff argues that the ALJ did not specifically reject this portion of Dr. Durr's opinion which was derived from testing, including the result of a low full-scale IQ. *Id.* Plaintiff also argues that Dr. Durr's opinion regarding Plaintiff's attendance at work is not encapsulated in the RFC's limitation to "simple, routine tasks." (Jt. Mot. 19.) Defendant counters that ALJ Delphey's RFC finding did account for Plaintiff's mild and moderate limitations and was substantially supported by the record. (Jt. Mot. 20.) The Court finds that ALJ Delphey did not err in evaluating Dr. Durr's medical opinion.

/ / /

Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir.2005). The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. *Id.* Here, at step four, ALJ Delphey made the following finding as to Plaintiff's RFC and his mental limitations: "He is limited to work involving simple, routine tasks. The claimant requires a stable and habitual workplace. He can have occasional work-related interactions with supervisors and co-workers, but no public interaction at all." (AR 15.) ALJ Delphey found Dr. Durr's opinions "partially persuasive" (AR 18) because Durr's opinion was supported but regarding consistency, ALJ Delphey found "somewhat different limitations are warranted by the record". (AR 18.) Specifically, ALJ Delphey noted the inconsistencies with Plaintiff's records where Dr. Donnelly opined Plaintiff's judgment and insight were generally fair, however at other times he was noted to have poor insight and judgment, and other records indicated normal insight and judgment. (*Id.*) ALJ Delphey also compared Dr. Durr's opinion that Plaintiff had a mild inability to interact appropriately with supervisors, coworkers and peers, with Plaintiff's hearing testimony where he reported activities such as taking public transit, getting rides from neighbors, and some grocery shopping. (*Id.*) Finally, as ALJ Delphey found Dr. Durr's opinion partially persuasive, it is reasonable that ALJ Delphey found Plaintiff should be limited to work involving simple, routine tasks in light of Dr. Durr's opinions that Plaintiff presented with the ability to understand, remember, and carry out short and simplistic instructions; a mild inability to understand, remember, and carry out detailed instructions; and the ability to make simplistic work-related decisions without special supervision. (*Id.*) The Court finds ALJ Delphey did not err in his analysis of the supportability and consistency of Dr. Durr's opinions and finding that it was partially persuasive.

The Court does not find Plaintiff's argument that ALJ Delphey ignored Dr. Durr's intellectual functioning report revealing a full-scale IQ of 47, as a sufficient basis to remand. When supporting his determinations, the ALJ must discuss and evaluate evidence

supporting the decision, however, the ALJ is not required to discuss evidence under any particular heading. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013); *Lewis*, 236 F.3d at 513; *see also Lewis*, 236 F.3d at 513; *Ozolins v. Saul*, 849 F.App'x 682, 683 (9th Cir. 2021) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of the foundations on which the ultimately factual conclusions are based.'"). Although Plaintiff's full-scale IQ was not addressed in the same paragraph regarding the persuasiveness of Dr. Durr, it was addressed in the ALJ's step-four analysis. ALJ Delphey cited to Plaintiff's intellectual functioning report's full-scale IQ of 47 and noted Dr. Durr's observation that Plaintiff answered questions and understood what Dr. Durr asked, even though Plaintiff's "efforts appear to be inconsistent" and the testing results "appear to be inconsistent with clinical presentation, educational history, and activities of daily living." (AR 17.) ALJ Delphey also stated that he "accepted [Dr. Durr's] judgment, based on her professional experience, that the results from the mental testing she administered were invalid based on poor and inconsistent effort." (AR 17.)

With respect to whether Dr. Durr's opinion regarding attendance was not properly encapsulated in the RFC's limitation to "simple, routine tasks," the Court finds this is a harmless error in light of the current split in case law within this circuit. *See de los Santos v. Kijakazi*, No. 1:20-CV-00919-GSA, 2022 WL 1541464, at *6 (E.D. Cal. May 16, 2022) (summarizing case law and holding that although a limitation to simple routine tasks is not a catchall encompassing other limitations, it is not harmful error because the case law has not provided guidance on "how an ALJ, as a practical matter, ought to translate a moderate attendance limitation into the RFC.") In particular, the *Santos* court held "there are few examples, if any, where a court has remanded to the ALJ solely for the purpose of translating a moderate attendance limitation into the RFC . . . . Plaintiff does not identify (nor is the Court aware) of any example or guiding principle illustrating how an ALJ would go about doing so. Accordingly, there is no basis to find harmful error here." *Santos*, 2022 WL 1541464, at *7.

3:22-CV-00119-WVG

Further, regarding Dr. Durr's opinion about attendance itself, courts in this district have found the ALJ did not err when they neither stated the limitations in the RFC nor specified their reasons for omitting them. *Sandra S. v. Kijakazi*, No. 21CV1248-AJB-MDD, 2022 WL 3355803, at *7–8 (S.D. Cal. Aug. 12, 2022), *report and recommendation adopted*, No. 21-CV-01248-AJB-MDD, 2022 WL 4180973 (S.D. Cal. Sept. 12, 2022). Similar courts have also declined to find error where the medical source does not provide specific restrictions regarding the number of days or percentage of time the claimant would be absent or off pace. *See Cecilia M. v. Kijakazi*, No. 5:20-cv-00092-PD, 2021 U.S. Dist. LEXIS 168123, at *10 (C.D. Cal. Sep. 3, 2021) (holding that "the ALJ was not obligated to include further limitations addressing Plaintiff's moderate limitations in completing a normal workday/workweek and performing job functions without special supervision where [the relied-upon medical opinions] did not articulate any specific restrictions."); *Fergerson*, 2017 WL 5054690, at *4, 2017 U.S. Dist. LEXIS 182053, at *11 ("an ALJ is not required to make up restrictions that are not actually articulated by any medical source or to give 'legitimate and specific reasons' for rejecting [attendance] restrictions never articulated.")  Dr. Durr did not expand on her assessment that Plaintiff has a mild inability to follow normal rules of the workplace, instead she merely opined "He is at risk for calling in sick, not showing up, or needing to leave early." (AR at 288.) Dr. Durr did not indicate a reason or basis for this conclusion, nor did she indicate the frequency which Plaintiff might miss work. (AR 283-288.) As such, the Court does not find this a sufficient basis to overturn ALJ Delphey's evaluation of Dr. Durr's opinions.

### c.  ALJ Delphey's Evaluation of Plaintiff's Subjective Testimony

The third issue is whether ALJ Delphey erred in evaluating Plaintiff's subjective testimony. Plaintiff argues that the ALJ rejected Plaintiff's statements but failed to provide specific, clear, and convincing reasons for doing so. (Jt. Mot. 24-25.) Plaintiff contends the ALJ listed evidence but "fails to connect this evidence to [Plaintiff's] testimony; the ALJ's decision lacks an analysis of [Plaintiff's] testimony compared with the evidence." (Jt. Mot. 25.) Defendant responds that the ALJ summarized Plaintiff's statements and testimony,

noting that Plaintiff alleged that he had issues with concentration, completing tasks, understanding, following instructions, non-command auditory hallucinations, occasional angry outbursts, irritability, and anxiety, (Jt. Mot. 27), which satisfies the burden under *Lambert, see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Court finds that ALJ Delphey properly considered Plaintiff's subjective complaints, and that Defendant is correct.

The Act and regulations prohibit granting disability benefits based solely on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); *see also* 20 C.F.R. §§ 404.1529(a), 404.919(a). When evaluating a claimant's subjective complaints, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 C.F.R. § 416.929(a).

The Ninth Circuit has established a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Next, if the claimant meets the first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The Ninth Circuit recently affirmed the requirement that "the ALJ must identify the specific testimony that he discredited and explain the evidence undermining it." *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020). However, Ninth Circuit cases "do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJ's to draft dissertations when denying benefits." *Id.* at 1277 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (holding that the ALJ erred by making

only a single general statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment"). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence, the Court may not second guess his or her decisions. *Id.* at 959.

Here, ALJ Delphey acknowledged that Plaintiff met the requirement at step one, by providing evidence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (AR 16.) However, at step two, ALJ Delphey found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . are somewhat inconsistent with the objective evidence of [the] record." (AR 16.) Neither party alleges that ALJ Delphey found that Plaintiff was malingering. (*See* Jt. Mot.) Therefore, the Court must determine whether ALJ Delphey provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. *See Lingenfelter*, 504 F.3d at 1036.

ALJ Delphey's findings were sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. As Defendant points out, ALJ Delphey summarized Plaintiff's allegations regarding his symptoms. (AR 15-16.) ALJ Delphey identified the specific testimony that he discredited; specifically, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 16.) ALJ Delphey then explained, in multiple paragraphs, specific reasons for discounting Plaintiff's subjective claims. (AR 16-17.)

First, ALJ Delphey cited to evidence in the record from a cooperative disability investigation, which indicated Plaintiff was able to answer all questions, was cooperative, did not exhibit any unusual behavior, was able to follow the conversation and maintain attention, did not display any unusual movements or tics, did not make any involuntary

noises, and did not exhibit any difficulty hearing the conversation. (AR 16.) Next, ALJ Delphey cited to evidence in the record from Dr. Durr's psychological consultative evaluation of Plaintiff, which stated that Plaintiff had no involuntary movements, was appropriately dressed, alert and oriented, did not appear confused, and no obvious psychotic indicators were present. (AR 16.) During Dr. Durr's examination, Plaintiff was able to recall 3 out of 3 objects immediately and 1 out of 3 objects at five minutes, what he had for breakfast, and his date of birth. (AR 16.) Although Plaintiff achieved a full-scale IQ of 47, Dr. Durr noted that the results appeared to be inconsistent with Plaintiff's clinical presentation, educational history, and activities of daily living. (AR 17.) Accordingly, ALJ Delphey stated that he "accept[ed] [Dr. Durr]'s clinical judgment, based on her professional experience, that the results from the mental testing she administered were invalid based on poor and inconsistent effort." (AR 17.) Third, ALJ Delphey pointed to records from Plaintiff's provider, Dr. Donnelly, which stated that medication injections helped Plaintiff, and that Plaintiff reported a decrease in hallucinations, that he was feeling calmer, generally reported "pretty good" concentration, and generally denied paranoia and hallucinations. (AR 17.) Finally, regarding Plaintiff's hearing, ALJ Delphey stated that Plaintiff could hear normal volume conversation. (AR 17.) Because ALJ Delphey supported his decision to discredit Plaintiff's subjective testimony with substantial evidence, the Court will not second guess his decision.

Therefore, in light of the above, the Court finds that ALJ Delphey presented clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.

## VI.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Parties' Joint Motion.

This case is REMANDED for further proceedings to remedy the defects in the ALJ's analysis of Dr. Donnelly's medical opinion. On remand, if the ALJ rejects Dr. Donnelly's opinion, he must articulate his credibility determinations in light of the supportability and

consistency factors and all available medical evidence.

**IT IS SO ORDERED.**

Dated: September 28, 2023

_____
Hon. William V. Gallo
United States Magistrate Judge